**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JAMES C. MULLINS, individually and on behalf of all others similarly situated, | CASE NO.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| THE J.M. SMUCKER COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff James C. Mullins ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, bring this action against The J.M. Smucker Company ("Smucker Company" or "Defendant"). Plaintiff makes the following allegations based on knowledge as to his own acts, and upon information and belief, and investigation, as to all other matters:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is a class action brought by Plaintiff on behalf of all persons who have purchased Jif® peanut butter products sold in Tennessee between February 2022 and May 2022. Plaintiff pursues claims against the Smucker Company for negligence, breach of warranties, fraudulent concealment, and unjust enrichment seeking redress for Defendant's business practices designed to mislead the public in connection with Defendant's promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of Jif® peanut butter products which Defendant, during the relevant time period, promoted as containing ingredients safe for human consumption and being safe for use, when, in fact, they cause bacterial infections, gastrointestinal illnesses and other illnesses resulting from *Salmonella* contamination.





Home / Brands You Love / Consumer Foods

## OUR CONSUMER FOOD BRANDS

Whether it's a mealtime get-together or a quick snack on the way to practice, the Smucker foods and snacks portfolio gives consumers the convenient, low-prep choices they want. Consumers continue to reach for our trusted brands–like *Smucker's®* fruit spreads and *Jif®* peanut butter, while also trying our emerging brands, including *Smucker's® Uncrustables®* and *Sahale Snacks®* mixes.

2.      The J.M. Smucker Company manufactures, labels, markets, and sells Jif® peanut butter products.

https://www.jmsmucker.com/brands-you-love/consumer-foods.

3.      Defendant is one of the nation's leading producers of what is considered to be high quality, safe peanut butter—Jif® peanut butter products. Consumers expect, when they purchase Jif® peanut butter products, they are purchasing safe and healthy peanut butter. This is especially true of Jif® peanut butter products, which are advertised as using high quality products.

https://www.jif.com/about-us/faq

4.      Unfortunately for Plaintiff, and all other similarly situated consumers of Jif®

Is Jif® peanut butter healthy?        ▲

We pride ourselves on offering quality products with the best ingredients. To see our nutrition facts, please visit each product listing for nutritional information.

peanut butter products, Jif® peanut butter products sold with the lot codes 1274425 – 2140425 with the first seven numbers ending in "425" were contaminated with *Salmonella*.

2

5.      On May 20, 2022, Defendant issued a recall of Jif® peanut butter products sold in the United States. As the recall explained "*Salmonella* is an organism which can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems. Healthy persons infected with *Salmonella* often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with *Salmonella* can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (*i.e.*, infected aneurysms), endocarditis and arthritis."[1]

6.      Defendant recalled over 40 Jif® peanut butter product lines that were contaminated by *Salmonella*.[2]

7.      Plaintiff and Class members did not know, and did not have a reason to know, that the Jif® peanut butter products they purchased were contaminated with *Salmonella*. Consumers expect the food they purchase to be safe for consumption and not contaminated by an organism "which can cause serious and sometimes fatal infections."[3]

8.      Plaintiff purchased Jif® peanut butter products manufactured and sold by Defendant, unaware that it was contaminated with *Salmonella*.

9.      Plaintiff brings this action on his own behalf, and on behalf of all other purchasers of Jif® peanut butter products sold in Tennessee with lot codes 1274425 – 2140425 with the first seven numbers ending with "425", to seek damages and injunctive relief for their injuries, including their out-of-pocket expenses for purchasing products that were not only worthless but

---

[1] *J.M. Smucker Co. Issues Voluntary Recall*, FDA, 2022 https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-products-sold-us-potential-salmonella (last visited May 23, 2022).
[2] *J.M. Smucker Co. Issues Voluntary Recall*, FDA, 2022 https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/j-m-smucker-co-issues-voluntary-recall-select-jifr-products-sold-us-potential-salmonella (last visited May 23, 2022).
[3] *Id.*

harmful, time and money spent to address symptoms and consequences of ingesting the Jif®

peanut butter products, personal injuries, emotional distress, and annoyance.

## PARTIES

10.     Plaintiff is a citizen and resident of Nashville, Tennessee. Plaintiff purchased Jif®

peanut butter products manufactured by Defendant.

11.     Defendant is incorporated in Ohio and has its company headquarters in Orrville,

Ohio. Defendant's Jif® peanut butter products are sold and purchased throughout the United

States.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332(d) because: (1) there are 100 or more putative Class members, (ii) the aggregate amount in

controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal

diversity because Plaintiff and Defendant are citizens of different states.

13.     Defendant transacts business within this District through the sale of Jif® peanut

butter products within this District, at grocery stores, drug stores, big box stores, membership

stores, and sold online directly to the citizens of this District.

14.     Venue is proper in this district under 28 U.S.C. §1391 because Defendant conducts

business in this District, is subject to jurisdiction in this District, and has sold, marketed, and or

distributed contaminated Jif® peanut butter products within this District at all times relevant to

this suit, and because a substantial part of the acts or occurrences giving rise to this suit occurred

within this District.

**FACTUAL ALLEGATIONS**

15.     Defendant manufactures, labels, and sells Jif® peanut butter products, which appear on grocery store shelves substantially as follows:



16.     On May 20, 2022, the U.S. Food and Drug Administration ("FDA") announced that it, the Centers for Disease Control and Prevention ("CDC"), and others are investigating a "multistate outbreak of *Salmonella* Senftenberg infections linked to certain Jif peanut butter products produced at the J.M. Smucker Company Facility in Lexington, Kentucky."[4]

17.     Specifically, the FDA stated that the "FDA conducted Whole Genome Sequencing ("WGS") analysis on an environmental sample collected at the Lexington, KY, J.M. Smucker Company facility in 2010. The analysis shows that this 2010 environmental sample matches the strain causing illnesses in this current outbreak. Epidemiologic evidence indicates that Jif brand peanut butter produced in the J.M. Smucker Company facility located in Lexington, KY, is the

---

[4] *Outbreak Investigation of Salmonella: Peanut Butter*, FDA, 2022, https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022 (last visited May 24, 2022).

likely cause of illnesses in this outbreak."[5] The "FDA's investigation is ongoing and more information will be provided as it becomes available."[6]

18.     The FDA advised all consumers to "not eat any recalled Jif brand peanut butter. Throw it away."[7]

19.     The FDA's Investigation Details as of May 26, 2022 states "a total of 16 people infected with the outbreak of *Salmonella* Senftenberg have been reported from 12 states. Illnesses started on dates ranging from February 17, 2022, through May 1, 2022. Sick people range in age from less than one to 85 years, with a median age of 56, and 71% are female. Of 6 people with information available, 2 have been hospitalized."

---

[5] *Id.*

[6] *Id.*

[7] *Salmonella Outbreak Linked to Peanut Butter*, CDC, https://www.cdc.gov/salmonella/senftenberg-05-22/index.html?fbclid=IwAR1MnI15sgv_OwryFygCTm5DlrVPypnzZqDNEdnzB03rlhwlrKzg7oKM7gI (last visited May 24, 2022).

Posted June 1, 2022

## May 26, 2022

CDC, public health and regulatory officials in several states, and the U.S. Food and Drug Administration (FDA) are collecting different types of data to investigate a multistate outbreak of *Salmonella* Senftenberg infections.

Epidemiologic and laboratory data show that some Jif brand peanut butters may be contaminated with *Salmonella* Senftenberg and are making people sick.

### Epidemiologic Data

Since the last update on May 21, 2022, two more illnesses have been reported. As of May 25, 2022, a total of 16 people infected with the outbreak strain of *Salmonella* Senftenberg have been reported from 12 states (see map). Illnesses started on dates ranging from February 19, 2022, through May 2, 2022 (see timeline).

Sick people range in age from less than one to 85 years, with a median age of 51, and 73% are female. Of nine people with information available, two have been hospitalized. No deaths have been reported.

The true number of sick people in an outbreak is likely much higher than the number reported, and the outbreak may not be limited to the states with known illnesses. This is because many people recover without medical care and are not tested for *Salmonella*. In addition, recent illnesses may not yet be reported as it usually takes 2 to 4 weeks to determine if a sick person is part of an outbreak.

State and local public health officials are interviewing people about the foods they ate in the week before they got sick. Of the 10 people interviewed, 10 (100%) reported eating peanut butter. Of the nine sick people with brand information, all nine (100%) reported eating Jif brand peanut butter.

https://www.cdc.gov/salmonella/senftenberg-05-22/details.html.

20.     According to the CDC, *Salmonella* "symptoms usually begin six hours to six days after infection and last four to seven days. However, some people do not develop symptoms for several weeks after infection and others experience symptoms for several weeks. *Salmonella* strains sometimes cause infection in urine, blood, bones, joints, or the nervous system, and can cause severe disease."[8]

21.     However, "most people infected with *Salmonella* experience diarrhea, fever, and stomach cramps… Some people – especially children younger than 5 years, adults 65 years and

---

[8] *Questions and Answers*, CDC, 2022 https://www.cdc.gov/salmonella/general/index.html (last visited May 23, 2022)

older, and people with weakened immune systems – may experience more severe illnesses that require medical treatment or hospitalization."[9]

22.    The Jif® peanut butter products being recalled are identified by lot code.



**Case Count Map Provided by CDC**

https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022.

23.    On December 31, 2021, Plaintiff purchased a Jif® peanut butter product that was identified as being recalled as identified by the lot code 1292 425 from Costco [Store #630].

---

[9] *Salmonella Outbreak Linked to Peanut Butter*, CDC, 2022 https://www.cdc.gov/salmonella/senftenberg-05-22/index.html?fbclid=IwAR1MnI15sgv_OwryFygCTm5DlrVPypnzZqDNEdnzB03rlhwlrKzg7oKM7gI (last visited May 24, 2022).



24.    Plaintiff purchased a Jif® peanut butter product that had a lot number matching the contaminated lots identified by the FDA's safety alert on May 20, 2022.

25.    Plaintiff purchased a Jif® peanut butter product that was contaminated with *Salmonella*.

26.    On May 20, 2022, the Smucker Company recalled Jif® peanut butter products.

27.     Plaintiff and Class members were exposed to Defendant's advertisements and marketing representing Jif® peanut butter products as healthy, uncontaminated, and safe for human consumption. As a result, Plaintiff and Class members reasonably believed that the Jif® peanut butter products they purchased would be safe and healthy and not contaminated with *Salmonella*.

28.     Defendant's affirmative representations that its Jif® peanut butter products were healthy, safe, and uncontaminated were false, deceptive, and likely to mislead consumers.

29.     Defendant's omission of the material fact that its Jif® peanut butter products were contaminated with *Salmonella* was false, deceptive, and likely to mislead consumers.

30.     Had Plaintiff known that the Jif® peanut butter products he bought were contaminated with *Salmonella*, he would not have purchased Jif® peanut butter products.

31.     Plaintiff, and all other consumers of the recalled Jif® peanut butter products, have suffered economic losses and personal injuries.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff on behalf of himself and all Class members, seeks damages, multiplied as provided by law against Defendant.

33.     Plaintiff brings this action on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b)(1)(A) and (b)(3) defined as follows (the "Class"):

> All persons in Tennessee who purchased or consumed Jif® peanut butter products that were recalled by The J.M. Smucker Company on or around May 20, 2022.

34.     Excluded from the Class are:

> a.     Defendant and its officers, directors, management, employees, subsidiaries, or affiliates;

  b.  All federal government entities;

  c.  All states (and sub-units of government and their entities) that, by law, preclude their participation as Plaintiff in private class action litigation;

  d.  The judges in this case and any members of their immediate families.

35.  Common questions of law or fact predominate and include:

  a.  Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of Jif® peanut butter products;

  b.  Whether Defendant sold the contaminated Jif® peanut butter products that were unreasonably dangerous to consumers such as Plaintiff and Class members;

  c.  Whether Defendant failed to adequately warn Plaintiff and Class members of the dangers with respect to the contaminated Jif® peanut butter products;

  d.  Whether Defendant was negligent for its failure to warn the Plaintiff and Class members about the contaminated Jif® peanut butter products;

  e.  Whether Plaintiff and Class members suffered damages as a result of the contaminated Jif® peanut butter products; and

  f.  Whether Defendant was negligent for failure to test its Jif® peanut butter products.

36.  Plaintiff's claims and bases for relief are typical to other Class members because all were subjected to the same unlawful course of conduct by Defendant and assert the same theory of liability and damages.

37.     Plaintiff will fairly and adequately protect and represent the interests of the other Class members. Plaintiff's interests coincide with, and are not antagonistic to, those of the Class members.

38.     Common issues predominate over any individual inquiries because the focus is on Defendant's uniform practices. The Class is definable and ascertainable.

39.     Plaintiff's counsel is competent and experienced in complex class action litigation and intend to protect Class members' interests adequately and fairly.

40.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

41.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude litigating it as a class action.

## CAUSES OF ACTION

### COUNT I
### Products Liability - Breach of Express Warranty
### Brought by Plaintiff on Behalf of the Class

42.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

43.     The Jif® peanut butter products are "goods" under all relevant laws.

44.     Plaintiff and Class members formed a contract with Defendant at the time they purchased Defendant's Jif® peanut butter products.

45.     The terms of the contract include the promises and affirmations of fact made by Defendant on the products' packaging and through marketing and advertising, as described above.

46.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the contract between Plaintiff and Class members and Defendant.

47.     As set forth above, Defendant represents through its advertising, labeling, marketing, and packaging, that its Jif® peanut butter products are safe for their intended use.

48.     All conditions precedent have occurred or were performed.

49.     Defendant breached express warranties on the Jif® peanut butter products and their qualities because they contained *Salmonella* and were unsafe for consumption at the time of purchase and did not conform to Defendant's affirmations and promises described above.

50.     Plaintiff and Class members would not have purchased the Jif® peanut butter products had they known the true nature of the harmful *Salmonella* contamination.

51.     As a result of Defendant's breach of warranty, Plaintiff and Class members suffered and continue to suffer damage and injury and are entitled to all damages, in addition to costs, interests, and fees, including attorney's fees, as allowed by law. Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

### COUNT II
**Products Liability - Breach of Implied Warranty**
**Brought by Plaintiff on Behalf of the Class**

52.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

53.    Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and selling of the Jif® peanut butter products.

54.    The Jif® peanut butter products are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Jif® peanut butter products, as goods, were purchased.

55.    Defendant entered into agreements with retailers to sell the Jif® peanut butter products to be used by Plaintiff and Class members for their personal use.

56.    The implied warranty of merchantability included with the sale of each Jif® peanut butter product means that Defendant warranted that Jif® peanut butter products would be fit for the ordinary purposes for which peanut butter is used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiff and the Class members.

57.    Defendant breached the implied warranty of merchantability because the Jif® peanut butter products are not fit for their ordinary purpose of being consumed by adults and children because the Jif® peanut butter products result in *Salmonella* infections. Therefore, the Jif® peanut butter products are not fit for their particular purpose of safely being consumed by adults and children.

58.    Defendant's warranty expressly applies to the purchaser of the Jif® peanut butter products, creating privity between Defendant and Plaintiff and Class members.

59.    However, privity is not required because Plaintiff and Class members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Jif® peanut butter products.

Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class members.

60.     Defendant has been provided with sufficient notice of its breaches of implied warranties associated with the Jif® peanut butter products.

61.     All conditions precedent have occurred or been performed.

62.     Had Plaintiff, Class members, and the consuming public known that the Jif® peanut butter products were unsafe for consumption, they would not have purchased the Jif® peanut butter products.

63.     As a direct and proximate result of the foregoing, Plaintiff and Class members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interests and fees, including attorney's fees, as allowed by law. Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

## COUNT III
### Negligence
### Brought by Plaintiff on Behalf of the Class

64.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

65.     Defendant, directly or indirectly, caused Jif® peanut butter products to be sold, distributed, marketed, promoted, and/or consumed by Plaintiff and Class members.

66.     At all times relevant to this litigation, Defendant owed a duty to Plaintiff, Class members, and the consuming public to exercise reasonable care in its designing, marketing,

supplying, packaging, promoting, and selling Jif® peanut butter products, including the duty to prevent *Salmonella* contamination of the Jif® peanut butter products.

67.     Defendant also owes a duty to Plaintiff, Class members, and the consuming public to manufacture, distribute, and sell Jif® peanut butter products that are safe and fit for human consumption, meaning without *Salmonella*.

68.     Plaintiff and all Class members are reasonable consumers who expect companies, like Defendant, to manufacture, distribute, and sell peanut butter products that are safe and fit for human consumption.

69.     At all relevant times to this litigation, Defendant knew, or in the exercise of reasonable care, should have known that Plaintiff and Class members purchased Jif® peanut butter products for human consumption.

70.     Defendant breached its duty to design, manufacture, distribute, and sell Jif® peanut butter products that are safe and fit for human consumption when it manufactured, distributed, and sold Jif® peanut butter products contaminated with *Salmonella*.

71.     Despite the ability and means of the Defendant to design, manufacture, distribute, and sell Jif® peanut butter products without *Salmonella*, Defendant failed to do so. Indeed, Defendant wrongfully produced, manufactured, distributed, and sold Jif® peanut butter products that were unsafe and unfit for human consumption.

72.     Defendant's negligence included:

a.  Violating state and federal laws and rules prohibiting the sale of adulterated, contaminated, and misbranded foods, which laws were designed to protect the class of persons to which Plaintiff and Class members belong;

b.  Failing to exercise reasonable care in setting manufacturing and quality

standards, proper hygiene of employees and equipment;

c.  Failing to maintain clean facilities through reasonable and necessary health and safety measures;

d.  Failing to ensure that the products that left its facilities were safe for human consumption;

e.  Selling and/or distributing Jif® peanut butter products contaminated with *Salmonella*;

f.  Selling and/or distributing Jif® peanut butter products while negligently and/or intentionally concealing the *Salmonella* contamination;

g.  Failing to promptly notify Plaintiff and Class members of the *Salmonella* contamination of Jif® peanut butter products; and

h.  Systematically failing to promptly notify the consuming public of the *Salmonella* contamination of Jif® peanut butter products.

73.  As a direct and proximate result of Defendant's breach of duty by manufacturing, distributing, and selling *Salmonella* contaminated Jif® peanut butter products, Plaintiff and all Class members have suffered and will continue to suffer injuries. Plaintiff and Class members had purchased the Jif® peanut butter products to consume them, and are unable to do so as a direct result of Defendant's negligence. Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

74.     Plaintiff's and Class members' injuries were foreseeable to Defendant because the FDA has linked the current *Salmonella* outbreak to an outbreak found in 2010 at the same manufacturing facility in Lexington, Kentucky.[10]

75.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

### COUNT IV
### Negligent Failure to Warn
### Brought by Plaintiff on Behalf of the Class

76.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

77.     Defendant owed Plaintiff and Class members a duty to warn consumers of any health risks associated with the Jif® peanut butter products.

78.     Defendant knew or should have known of the contamination of *Salmonella* within the Jif® peanut butter products but failed to warn Plaintiff and Class members about it.

79.     Defendant's breach of duty to warn caused Plaintiff and Class members to suffer injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

80.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under law.

---

[10] *Outbreak Investigation of Salmonella: Peanut Butter*, FDA, 2022  https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-salmonella-peanut-butter-may-2022 (last visited May 24, 2022).

## COUNT V
### Negligent Design Defect
### Brought by Plaintiff on Behalf of the Class

81.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

82.     Defendant owes a duty to Plaintiff and Class members to design the Jif® peanut butter products in a reasonable manner.

83.     The design of the Jif® peanut butter products was defective and unreasonably dangerous, causing *Salmonella* infections.

84.     The design of the Jif® peanut butter products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Jif® peanut butter products outweighed the benefits and rendered the Jif® peanut butter products to be unreasonably dangerous.

85.     There are other peanut butter products that were available to Plaintiff and Class members that do not cause *Salmonella* infections.

86.     The risk/benefit profile of the Jif® peanut butter products was unreasonable, and the Jif® peanut butter products should not have been sold in the market.

87.     The Jif® peanut butter products did not perform as a reasonable consumer would expect.

88.     Defendant's negligent design of the Jif® peanut butter products was the proximate cause of the damages to Plaintiff and Class members.

89.     Plaintiff and Class members suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under the law. Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms

and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

<div align="center">

**<u>COUNT VI</u>**
**Breach of Implied Warranty of Merchantability**
**Brought by Plaintiff on Behalf of the Class**

</div>

90. Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

91. Defendant is a merchant engaged in the sale of goods to Plaintiff and Class members.

92. There was a sale of goods from Defendant to Plaintiff and Class members.

93. As the developer, manufacturer, marketer, distributor, and/or seller of the defective Jif® peanut butter products, Defendant impliedly warranted to Plaintiff and Class members that the Jif® peanut butter products were fit for their intended purpose in that they would be safe for Plaintiff and Class members to consume.

94. Contrary to these representation and warranties, the Jif® peanut butter products were not fit for their ordinary use, and did not conform to Defendant's affirmations of fact and promises because use of the Jif® peanut butter products was accompanied by the risk of adverse health effects that do not conform to the packaging and consumer standards.

95. Defendant breached the implied warranty in the contract for the sale of Jif® peanut butter products by knowingly selling to Plaintiff and Class members a product that Defendant knew would expose Plaintiff and Class members to significant health risks, thus meaning Defendant knew that the Jif® peanut butter products were not fit for their intended purpose.

96. Defendant was on notice of this breach, as it aware of the adverse health effects caused by *Salmonella* in the Jif® peanut butter products.

97.     Plaintiff and Class members did not receive the goods as bargained for because the goods were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

98.     Plaintiff and Class members are the intended beneficiaries of Defendant's implied warranties.

99.     The Jif® peanut butter products were not altered by Plaintiff or Class members.

100.    Plaintiff and Class members used the Jif® peanut butter products in the ordinary manner in which such products are intended to be used.

101.    The Jif® peanut butter products were defective when they left the exclusive control of Defendant.

102.    The Jif® peanut butter products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods that they bargained for.

103.    Plaintiff and Class members purchased the Jif® peanut butter products that contained the defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

104.    Defendant breached the implied warranty of merchantability to Plaintiff and Class members.

105.    Defendant's attempt to limit or disclaim the implied warranty of merchantability in a manner that would exclude coverage of the defect is unenforceable and void.

106.    Plaintiff and Class members have been damaged by Defendant's breach of the implied warranty of merchantability.

107.     As a result of the defect in the Jif® peanut butter products, Plaintiff and Class members have suffered damages including, but not limited to, the cost of the defective products, loss of use of the products and other related damage. Plaintiff and Class members suffered damages in the amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under the law. Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

<u>**COUNT VII**</u>
**Strict Liability – Failure to Warn**
**Brought by Plaintiff on Behalf of the Class**

108.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein

109.     Defendant had a duty to warn Plaintiff and Class members regarding the defect and the true risks associated with the Jif® peanut butter products contaminated with *Salmonella*.

110.     Defendant was in a superior position to know of the *Salmonella* contamination, yet, as outlined above, chose to do nothing when the defect became known to it.

111.     Defendant failed to provide adequate warnings regarding the risks of *Salmonella* within the Jif® peanut butter products after knowledge of the defect was known only to it.

112.     Defendant had information regarding the true risks but failed to warn Plaintiff and Class members to strengthen its warnings.

113.     Despite its knowledge of the defect and obligation to unilaterally strengthen the warnings, Defendant instead chose to actively conceal this knowledge from the public.

22

114.     Plaintiff and Class members would not have purchased, chosen, or paid for the Jif®
peanut butter products had they known of the defect and the risks of purchasing contaminated Jif®
peanut butter products.

115.     The *Salmonella* contamination proximately caused Plaintiff's and Class members'
damages.

116.     Plaintiff and Class members have suffered damages in an amount to be determined
at trial and are entitled to any incidental, consequential, and other damages and other legal and
equitable relief, as well as costs and attorneys' fees, available under the law. Plaintiff and Class
members suffered injury, including but not limited to out-of-pocket expenses for purchasing
products that were not only worthless but harmful, time and money spent to address symptoms
and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries,
emotional distress, and annoyance.

## COUNT VIII
### Strict Liability – Design Defect
### Brought by Plaintiff on Behalf of the Class

117.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

118.     The design of the Jif® peanut butter products was defective and unreasonably
dangerous.

119.     Use of Defendant's Jif® peanut butter products by Plaintiff and Class members
caused exposure to *Salmonella* infections.

120.     The design of the Jif® peanut butter products by Defendant rendered them not
reasonably fit, suitable, or safe for their intended purposes.

121.     The dangers of the Jif® peanut butter products outweighed the benefits and
rendered the Jif® peanut butter products unreasonably dangerous to Plaintiff and Class members.

122.     There are other peanut butter products that do not cause *Salmonella* infections, meaning that there were other means of production available to Defendant.

123.     The Jif® peanut butter products were unreasonably unsafe, and the Jif® peanut butter products should have had stronger and clearer warnings or should not have been sold in the market.

124.     The Jif® peanut butter products did not perform as an ordinary consumer would expect.

125.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under the law. Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

<u>COUNT IX</u>
**Fraudulent Concealment**
**Brought by Plaintiff on Behalf of the Class**

126.     Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

127.     Defendant concealed and suppressed material facts regarding the Jif® peanut butter products – most importantly, the fact that they were contaminated with *Salmonella*.

128.     As alleged above, Defendant knew, or should have known, that the Jif® peanut butter products were defective due to the contamination of *Salmonella*. As a consequence, the contaminated Jif® peanut butter products were no longer safe and fit for human consumption.

24

129.     The contamination of *Salmonella* within a product meant for human consumption poses a serious health risk to those that bought and consumed the Jif® peanut butter products. Therefore, the Jif® peanut butter products are unreasonably dangerous because they can cause "diarrhea, fever, and stomach cramps… Some people – especially children younger than 5 years, adults 65 years and older, and people with weakened immune systems – may experience more severe illnesses that require medical treatment or hospitalization."[11]

130.     Defendant acquired knowledge of the *Salmonella* contamination prior to Plaintiff and Class members purchasing the Jif® peanut butter products through sources not available to consumers including, but not limited to, the FDA, FDA testing, Defendant's own testing of the facility, Defendant's own testing of the individual Jif® peanut butter products, and complaints from consumers.

131.     While Defendant knew about the *Salmonella* contamination, and the safety risks with human consumption of *Salmonella* contaminated food, Defendant nevertheless concealed and failed to disclose the defective nature of the Jif® peanut butter products to Plaintiff and Class members at the time of purchase.

132.     Defendant had a duty to disclose the *Salmonella* contamination because it:

    a.     Had exclusive and/or far superior knowledge of the defect and access to the facts;

    b.     Knew the facts were not known or reasonably discoverable to Plaintiff and Class members;

    c.     Concealed the facts and defect from Plaintiff and Class members;

---

[11] *Questions and Answers*, CDC, 2022 https://www.cdc.gov/salmonella/general/index.html (last visited May 23, 2022).

     d.    Continued to manufacture, produce, distribute and sell the defective Jif® peanut butter products, while purposefully withholding material facts from Plaintiff and Class members that would have prevented Plaintiff and Class members from purchasing the contaminated Jif® peanut butter products.

133.    In failing to disclose the material facts to Plaintiff and Class members, Defendant intended to hide from Plaintiff and Class members that they were purchasing and consuming Jif® peanut butter products with harmful defects that rendered them unfit for human use, and thus acted with scienter and/or intent to defraud.

134.    These omitted and concealed facts are material because, had Plaintiff and Class members known of the defect, they would not have purchased the Jif® peanut butter products. Indeed, Plaintiff and Class members trusted Defendant to manufacture, sell, distribute, and produce peanut butter that was safe and fit for human consumption or to not put into the stream of commerce peanut butter that was unfit for human consumption.

135.    Defendant concealed and suppressed these material facts in order to mislead Plaintiff, Class members, and the consuming public into believing that the Jif® peanut butter products were safe and fit for human consumption, as reasonably expected by consumers.

136.    Plaintiff and Class members were unaware of these material facts and would not have purchased the Jif® peanut butter products had they known.

137.    Because of the concealment of the *Salmonella* contamination within the Jif® peanut butter products, Plaintiff and Class members purchased the Jif® peanut butter products that were not safe for consumption. As a direct result of purchasing Jif® peanut butter products contaminated with *Salmonella*, Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money

spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

138.    Accordingly, Defendant is liable for Plaintiff's and Class member's damages in an amount to be determined at trial. Plaintiff and Class members are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

<div align="center">

**COUNT X**
**Unjust Enrichment**
**Brought by Plaintiff on Behalf of the Class**

</div>

139.    Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

140.    Plaintiff and Class members conferred benefits on Defendant in the form of monies paid to purchase Defendant's *Salmonella*-contaminated and worthless Jif® peanut butter products.

141.    Defendant voluntarily accepted and retained this benefit.

142.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for Jif® peanut butter products unfit for human consumption, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

143.    Defendant received benefits in the form of revenues from purchases of the Jif® peanut butter products to the detriment of Plaintiff and Class members because they purchased Jif® peanut butter products that were not what they bargained for and were not safe and healthy, as claimed by Defendant.

144.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Jif® peanut butter products by Plaintiff and Class members. Retention of those monies under these circumstances is unjust and inequitable because the *Salmonella* contamination

caused injuries to Plaintiff and Class members. They would not have purchased the Jif® peanut butter products had they known that they were contaminated by *Salmonella*.

145.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment.

### COUNT XI
**Punitive Damages**
**Brought by Plaintiff on Behalf of the Class**

146.   Plaintiff incorporates by reference paragraphs 1–41 as if fully set forth herein.

147.   Defendant knew or should have known that the Jif® peanut butter products were contaminated with *Salmonella* and thereby unfit for human consumption.

148.   Defendant failed to disclose these facts to the consuming public, including Plaintiff and Class members.

149.   Defendant risked the safety of recipients of its products, including Plaintiff and Class members, when Defendant knew of the *Salmonella* contamination with the Jif® peanut butter products and suppressed this knowledge from the general consuming public, including Plaintiff and Class members.

150.   Defendant made the conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of its *Salmonella* contaminated Jif® peanut butter products, despite knowing that the products were defective.

151.   Defendant knew or should have known that this conduct would result in injury or damage.

152.   Defendant's intentional, reckless, fraudulent, and malicious failure to disclose information regarding the health and safety risks of consuming the contaminated Jif® peanut butter

products deprived Plaintiff and Class members of the necessary information to enable them to weigh the true risks of consuming the contaminated Jif® peanut butter products against their benefits.

153.     Defendant acted with wanton and reckless conscious indifference and utter disregard of the consequences of its actions upon the health, safety and rights of others, including Plaintiff and Class members.

154.     As a direct and proximate result of Defendant's conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff and Class members, Plaintiff and Class members have suffered severe and permanent personal and economic injuries as set forth above. As a result of Defendant's failures, acts, and omissions, Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms and consequences of ingesting the contaminated Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

155.     Defendant's outrageous conduct warrants an award of punitive damages.

156.     The aforesaid conduct of Defendant was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff and Class members, thereby entitling Plaintiff and Class members to punitive damages in an amount appropriate to punish Defendant and deter it and others from similar conduct in the future.

<u>**COUNT XII**</u>
**Violation of the Tennessee Consumer Protection Act**
**Tenn. Stat. § 47-18-101, *et seq*.**
**Brought by Plaintiff on Behalf of the Class**

157.     Plaintiff incorporate by reference paragraphs 1–41 as if fully set forth herein.

158.    The Tennessee Consumer Protection Act, Tenn. Stat. § 47-18-101, *et seq*. protects consumers from unfair and deceptive practices and acts.

159.    Plaintiff is a consumer under Tenn. Stat. § 47-18-103(3).

160.    Tenn. Stat. § 47-18-104(b)(5), (7), and (9) declare the following acts or practices unlawful:

a.    Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.    Representing that goods are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; and

c.    Advertising goods with intent not to sell them as advertised.

161.    Defendant made false and fraudulent statements, and misrepresented, concealed, and omitted material facts regarding the Jif® peanut butter products, including the misrepresentation that the Jif® peanut butter products were safe for human consumption, and the omission that the Jif® peanut butter products contained *Salmonella*.

162.    Defendant's aforementioned misrepresentations, omissions, and concealment regarding the Jif® peanut butter products constitute unfair and deceptive acts or practices.

163.    Defendant's aforementioned misrepresentations, omissions, and concealment possess the tendency or capacity to mislead and create the likelihood of consumer confusion.

164.    Defendant's aforementioned misrepresentations, omissions, and concealment were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of the Jif® peanut butter products to Plaintiff and Class members.

165.    Defendant's aforementioned misrepresentations, omissions, and concealment are unconscionable because they offend public policy and/or cause substantial injury to consumers.

166.    Defendant intended that Plaintiff and Class members rely on its respective aforementioned false statements, misrepresentations, omissions, and concealment of material facts in purchasing Jif® peanut butter products.

167.    Plaintiff and Class members reasonably relied on Defendant's respective misrepresentations, omissions, and concealment when they purchased the Jif® peanut butter products.

168.    Acting as reasonable consumers, had Plaintiff and Class members been aware of the true facts regarding the presence of *Salmonella* in the Jif® peanut butter products, they would have declined to purchase these products.

169.    Acting as reasonable consumers, Plaintiff and Class members could not have avoided the injuries suffered by purchasing the Jif® peanut butter products because they did not have any reason to suspect that the products contained *Salmonella*. Moreover, the detection of *Salmonella* in food requires rigorous and specialized scientific testing that goes well beyond the level of inquiry a reasonable consumer would make into the issue, and, in any event, such testing was not possible without Plaintiff and Class members first purchasing the Jif® peanut butter products.

170.    As a direct and proximate result of Defendant's false, misleading, and deceptive acts and practices set forth above, Plaintiff and Class members suffered damages by purchasing the Jif® peanut butter products because they would not have purchased them had they known the truth, and they received a product that was worthless because it contains unsafe *Salmonella*.

171.    As a result of Defendant's failures, acts, and omissions, Plaintiff and Class members suffered injury, including but not limited to out-of-pocket expenses for purchasing products that were not only worthless but harmful, time and money spent to address symptoms

and consequences of ingesting the Jif® peanut butter products, personal injuries, emotional distress, and annoyance.

172.    These damages were reasonably foreseeable because the Jif® peanut butter products are known to cause illnesses.

173.    Plaintiff and Class members seek actual and punitive damages for Defendant's persistent and knowing violations, injunctive and declaratory relief, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Class members, respectfully requests that this Court:

A.    Certify the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the members of the Class about the pendency of this action;

C.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.    Award pre-judgment and post-judgment interest;

E.    Grant appropriate injunctive and/or declaratory relief;

F.    Award reasonable attorney's fees and costs; and

G.    Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action of all issues so triable.

<div style="margin-left: 40%;">

Respectfully Submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Michael A. Smith, Jr. (0097147)
**DANN LAW**
15000 Madison Avenue
Lakewood, Ohio 44107
(216) 373-0539 phone
(216) 373-0536 facsimile
notices@dannlaw.com

-AND-

Thomas A. Zimmerman, Jr.
Sharon A. Harris
Matthew C. De Re
Jeffrey D. Blake
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
tom@attorneyzim.com
sharon@attorneyzim.com
matt@attorneyzim.com
jeff@attorneyzim.com

*Attorneys for Plaintiff and the
Proposed Class*

</div>